**The STATE of Utah, Plaintiff and Respondent,**

v.

**James (Jim) KOURBELAS, Defendant and Appellant.**

**No. 16875.**

Supreme Court of Utah.

Nov. 28, 1980.

David B. Havas, Ogden, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Olga Agnello-Raspa, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

CROCKETT, Chief Justice:

Defendant James Kourbelas was convicted by a jury of distribution of a controlled substance.[1] He was sentenced to serve not more than a five-year prison term. The sentence was suspended and he was placed on probation. The issue raised on appeal is whether the evidence of entrapment necessarily creates a reasonable doubt as to the defendant's guilt.

On June 13, 1979, the defendant and some friends were boating on Lake Powell in Southern Utah. At the time, one Mark Nelson was working as an undercover narcotics agent for the San Juan County Sheriff's office and had been hired as the assistant manager of the gas dock at the marina.

1. In violation of Sec., 58–37–8(1)(a)(ii), U.C.A. 1953.

When the defendant and his friends brought their houseboat into the marina for refueling, there was some problem about the gas mixture and Mr. Nelson intervened to help resolve it. In his conversations with the defendant, Mr. Nelson brought up the subject of selling marijuana. He told the defendant that there "could be a lot of money made down here if I had some way of getting some . . . ." Mr. Nelson then asked: "Can you help me get some or do you know where I can get some?" When the defendant replied, "I'll see what I can do," Mr. Nelson asked for his name, address and telephone number. The defendant, who resided in North Salt Lake, gave that information to him and told Mr. Nelson to get in touch.

About two weeks later, on June 30, 1979, Mr. Nelson telephoned the defendant, reminded him of their conversation at Lake Powell, and asked him if he could get some marijuana. According to Mr. Nelson, the defendant said he could and asked how much he wanted. When Mr. Nelson stated "four or five pounds," the defendant said he would call back later that afternoon; however, he did not do so.

Mr. Nelson testified that he called the defendant two more times on June 30. During one of those conversations, Mr. Nelson said: "Hey, I hate to keep bothering you like this," and that the defendant responded that it was "no problem at all." Mr. Nelson called again the next morning and asked once more if the defendant could sell some marijuana. The defendant promised to call back. Later that same day, the defendant reported that he had not been able to contact one "Ladell" who might have some marijuana, but that he would keep trying.

On the morning of July 2, Mr. Nelson again called the defendant to find out about the marijuana. The defendant stated he had spoken with Ladell and that there was two pounds of marijuana available. They discussed the price and how the defendant could pay Ladell and arranged to meet at the Sherwood Hills golf course for the exchange.

When they met, the defendant suggested they "get inside the truck and light up some to see if it's good stuff." Mr. Nelson stated that was done and he accepted a beer from the defendant. After the money was exchanged and Mr. Nelson received the marijuana, officers who had the transaction under surveillance appeared and placed the defendant under arrest.

On the basis of the evidence, the defendant moved to dismiss the case on the ground of entrapment, pursuant to Sec. 76–2–303, U.C.A.1953:

(1) It is a defense that the actor was entrapped into committing the offense. *Entrapment occurs when a law enforcement officer* or a person directed by or acting in cooperation with the officer *induces the commission of an offense* in order to obtain evidence of the commission for prosecution *by methods creating a substantial risk that the offense would be committed by one not otherwise ready to commit it.* Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

The trial court conducted an evidentiary hearing on the motion [2] and in commenting thereon stated, in part:

*The crucial question, not easy to answer,* to which the court must address itself, is whether the police conduct revealed in the particular case falls below standards, to which common feelings respond for the proper use of governmental power. [All emphasis added.]

▆ It is well known that, due to the secretive nature of trafficking in drugs, it is common practice to use undercover agents to investigate such activity.[3] Unless there is abuse or imposition, that procedure is recognized as legitimate.[4] But it is, of

---

**2.** Pursuant to Sec. 76–2–303(4). The defendant renewed his motion after the prosecution's case in chief.

**3.** *State v. Curtis,* Utah, 542 P.2d 744 (1975).

**4.** See statements in *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932);

course, not a proper function of law enforcement officers, either themselves or by the use of undercover agents or decoys, to induce persons who otherwise would be law-abiding into the commission of crime.[5]

■ In arriving at our conclusion in this case, we are not unmindful of our duty to give all proper deference to the rulings of the trial court, and to the findings of the jury. Nevertheless, they are not to be regarded as so infallible as to be beyond the possibility of error. That is the reason for the responsibility given this Court of reviewing those actions on appeal. In doing so, it is important to have in mind that the presumption of innocence is more than a platitude to be given lip service. It came into being as a result of wisdom born of experience and should be given meaning and effect where it is properly applicable. That safeguard is in harmony with the adage of our law: that it is better to risk that some guilty persons go free than that an innocent person be punished.[6] Therefore, if reasonable minds acting fairly on the evidence should necessarily have a reasonable doubt as to the defendant's guilt, he is entitled to an acquittal.

These facts are significant: that it was Mr. Nelson who first suggested the purchase of marijuana from the defendant; that after two weeks had passed, it was he who renewed the contact and the request, which he followed up by calling the defendant at least five times in attempting to purchase the marijuana. This is to be considered together with the fact that there is no evidence that the defendant had previously possessed or dealt in the drug.[7] Based on those facts, we think that the above-quoted statement of the trial judge relating to whether it was the police con-

duct which induced this crime is a "crucial question, not easy to answer ...," was a well-advised observation.

■ It is our opinion that, if the rule as to the presumption of innocence is fairly and properly applied, there necessarily exists a reasonable doubt as to whether the offense committed was the product of the defendant's initiative and desire, or was induced by the persistent requests of Mr. Nelson. Accordingly, it is our conclusion that the defendant's conviction should be reversed. No costs awarded.

MAUGHAN, WILKINS and HALL, JJ., concur.

STEWART, J., concurs in the result.

---

Smith v. State, 258 Ind.App. 415, 281 N.E.2d 803 (1972); Pascu v. State, Alaska, 577 P.2d 1064 (1978).

**5.** State v. Curtis, supra, note 3; State v. Sainz, 84 N.M. 259, 501 P.2d 1247 (1972). This Court has adopted the objective test as to the method of determining whether a defendant has been entrapped. See State v. Taylor, Utah, 599 P.2d 496 (1979); State v. Salmon, Utah, 612 P.2d 366 (1980).

**6.** See statements in State v. Sullivan, 6 Utah 2d 110, 307 P.2d 212 (1957).

**7.** We have stated that "when it is known or suspected that a person is engaged in criminal activities, or is desiring to do so, it is not entrapment to provide an opportunity for such a person to carry out his criminal intentions." State v. Curtis, supra, note 3, at 746.