2022 UT App 82

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
SHANE CRAIG SMITH,
Appellant.

Opinion
No. 20200782-CA
Filed June 30, 2022

Fourth District Court, Provo Department
The Honorable M. James Brady
No. 191403507

Jennifer L. Foresta, Bryson King, and Douglas J.
Thompson, Attorneys for Appellant

Sean D. Reyes, Kris C. Leonard, and Christopher D.
Ballard, Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGE
GREGORY K. ORME and JUSTICE DIANA HAGEN[1] concurred.

HARRIS, Judge:

¶1 The "13-year-old girl" Shane Craig Smith met on the internet was, in reality, an undercover police detective. After arranging to pick up the "girl" in person at a convenience store, Smith was arrested and later charged with various crimes, including attempted child kidnapping and several attempted sex crimes. He eventually entered a conditional guilty plea to some of

---

1. Justice Diana Hagen began her work on this case as a judge of the Utah Court of Appeals. She became a member of the Utah Supreme Court thereafter and completed her work on the case sitting by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 3-108(4).

the charges, reserving his right to appeal two issues: whether there was insufficient evidence to bind over the attempt charges and whether the district court erred by denying his motion to dismiss all the charges on the basis that he had been entrapped. Smith now appeals, raising those two issues. For the reasons discussed, we affirm his convictions.

BACKGROUND[2]

¶2     One evening, a police detective (Detective) was conducting an internet sting operation. He created an online persona on a text-based internet application (the app) that he understood had a reputation as a "hookup" site for individuals seeking sexual companionship. Although the app required users to be eighteen years of age or older, Detective had seen several cases involving "real child victims" on the app. In creating his online persona, Detective used a moniker like "Fun Girl" or "Good Time," and selected as his profile picture a stock photograph of an unknown female; he selected that particular photo because it appeared to be an "attractive" woman between the ages of eighteen and twenty-five. Across the front of the profile photo, Detective affixed the words "Wanting to HU," a term he stated meant to "hook up." Detective posted this profile, including the message "Wanting to HU," in a chat room titled "Sexual Confessions."

¶3     Detective's post received "hundreds" of responses, and he engaged in chats with "more than half of them." One of the app users who responded to Detective's post was Smith, whose initial response was "I'm down." Off and on over the next three hours, Smith and Detective engaged in the following exchange, which

2. When we review a "magistrate's bindover decision, we view all evidence in the light most favorable to the prosecution, draw all reasonable inferences in favor of the prosecution, and recite the facts with that standard in mind." *State v. Nihells*, 2019 UT App 210, n.1, 457 P.3d 1121 (quotation simplified).

we include here in its entirety, accompanied by some explanatory footnotes:

| | |
|---|---|
| Detective: | How r u |
| Smith: | Good you |
| Detective: | Bored |
| Detective: | U? |
| Smith: | Looking for a HU that can keep up |
| Smith: | Lol. But other than that bored as well |
| Smith: | So are you still looking |
| Detective: | What kind of keep up |
| Smith: | As in can actually go for as long as I can |
| Smith: | Or handle my dick. I'm bigger than most |
| Detective: | How long do u go? And bigger than most huh [smirking emoji] |
| Smith: | I can cum and keep going and yeah |
| Smith: | [photo 1 sent of an exposed penis] |
| Smith: | [photo 2 sent of an exposed penis] |
| Smith: | 9 inches |
| Smith: | 2 wide |
| Smith: | Thoughts? |
| Detective: | Wow that is big |
| Smith: | Any pic you want to send me? |
| Detective: | I need a ride to Cali if u can hook me up |
| Smith: | California? |
| Detective: | Yeah |
| Smith: | And how would you repay me? |

Detective:  What do u want?

Smith:  Well send me some private photos so I can see what I'm working with and I'll tell you

Detective:  I ran away from home and want to make it to Cali

Detective:  I can send u a pic if your still good

Smith:  I'm still good

Smith:  ?? So

Detective:  I'm 13 if that makes but willing to help you if you help me

Smith:  Well prove it

Smith:  You there

Detective:  [photo sent of half a woman's face][3]

Smith:  Take one that is more skin hun

Smith:  One that proves your willing to help me ;)

Smith:  Hello?

Detective:  Give me the $200 for food and cash so I can pay someone for a ride and I'll do whatever u want

---

3. Detective obtained this photograph (as well as the ones referenced later, depicting a woman flipping off the camera and touching her eyebrow and nose) from another officer. The individual in the photographs was a 23-year-old woman who sometimes worked with detectives as a confidential informant. The officer who provided the photographs later explained that, in his view, the woman "looks a lot younger than her age" and that he chose her with this in mind.

| | |
|---|---|
| Smith: | Send me a picture and once your down first |
| Smith: | Like I could give you a ride |
| Smith: | Prove* |
| Detective: | Look I could really use the cash right now |
| Smith: | And I could really use proof you're serious |
| Detective: | K thanks |
| Smith: | Too many scams sorry but without proof nothing |
| Detective: | I'm just on the streets trying to get gone from here |
| Smith: | Like I said I could give you a ride |
| Detective: | So do I need to give bjs[4] all the way there? Or r we going to have sex cause I'm a virgin |
| Detective: | Or can u give me cash |
| Smith: | Bj or sex it's up to you |
| Smith: | But I still need a pic for proof |
| Detective: | I would just rather get cash also so I can eat when I get there is that possible |
| Detective: | U are a stranger and I want to get there safe |
| Detective: | [photo sent of a girl in overall shorts in a public bathroom mirror] |
| Detective: | I guess not |

---

4. During his testimony, Detective explained that "bj" is an acronym for "blow job" and is intended to refer to oral sex.

Detective:   Do u know anyone to help me

Smith:   You said you'd do whatever what does that mean

Smith:   And that pic isn't proof

Detective:   I told you I'll give u bj and asked if you could maybe give cash for me and I'll ride your 9 if it fits

Smith:   Send me a full body nude or one of your tits and pussy so I know you're legit

Detective:   No I don't want pics out of me. I would rather do it

Smith:   And I'd rather have insurance you're not a cop

Detective:   Fuck off I don't care then

Detective:   I'm not a cop

Smith:   It's literally one pic that you could take in 30 seconds

Detective:   No I had a friend get sucked into that once

Smith:   Yeah and I want to make sure you're legit

Smith:   Funnily I have the 200 and enough to get you to California but it's whatever I guess you really don't need it

Detective:   I do, but I don't want nudes

Detective:   They never go away

Smith:   Yours are just to verify your legit. I'm not about to keep them. That's just weird

Detective:   I really need it but just please no nudes

Smith: Then send me 3 in just your underwear

Detective: I told u I would make it worth the trip

Smith: Ya still need proof first

Detective: Sorry I will not do it

Smith: Ok send me enough pics so I know you're a real person. Not a cop

Smith: Or what's your Facebook or Instagram so that way I can look check and see if you're legit

Detective: I feel like you are just trying to get a bunch of pictures of me. I'll send you one more i guess but that's it

Detective: [photo sent of girl in headphones flipping off the camera]

Smith: Okay now that I've seen what you look like send me two photos of you right now one touching your nose in one touching your eyebrow that will be verification enough

Smith: If you can't touch your nose and your eyebrow then I know you're fake because there is nothing sexy or solicit or anything like that about touching your nose and your eyebrow

Detective: I have done slot for u how do I not know u will traffic me

Detective: A lot

Smith: I will if and only if you send those two verification or you send one with you touching both

Detective: [photo sent of the same girl touching her eyebrow]

Detective: [photo sent of the same girl touching her nose]

Detective: There

Detective: Can u get me a ride tonight or in the morning?

Smith: I can give you a ride tonight. Where are you

Smith: Where are you

Smith: And where in California would we be going

Detective: San Diego?

Smith: That works we would need to have some fun before hand

Smith: Like on the way

Detective: Im at my friends by maverick by thanksgiving point in lehi

Smith: Ok

Detective: Can I at least know ur name or a pic of ur face to see who is getting me

Smith: My name is Shannon

Detective: K

Detective: How long I don't want to freeze

Detective: I'm a king my shit now

Detective: Pack*

Smith: Ok. About 25 minutes

Detective: K

Detective: Let me know when ur here and I'll run over

Smith: Are you gonna blow me when we start driving

Detective: If u want

Smith: Or do I need to find a place

Smith: Yes I want

Detective: We can drive and I can start I want to hit the road

Smith: I'll be there in about 5 min

Detective: K what do I look for

Smith: I'll look for you and let you know when I see you

Detective: K

Smith: Walk to the front of the store

Detective: K

Smith: Next to the ice box outside

Detective: Get me a drink to meet

Detective: It's cold

Smith: If you want the ride you will go to the ice box rn if not I'll go

Smith: On the North side of the store

Smith: Where are you

Detective: K

Detective: Out front

Smith: Ok look forward

Smith: Come hop in

Smith:      I blinked[5] at you

Detective:  Where

Detective:  It's cold

Smith:      In the parking lot. To your left

Smith:      Go back to where you were

Smith:      I know

Detective:  Walk to u?

Smith:      Yes

¶4     At this point, officers arrested Smith. Once he was in custody, Smith admitted that he thought he had been communicating with a 13-year-old girl with whom he "wanted to have blow jobs and sex," but maintained that, because she was a runaway, he had merely planned on taking her to the local police station and not to California.

¶5     The State ultimately charged Smith with five crimes: attempted rape of a child, attempted sodomy on a child, attempted sexual exploitation of a minor, attempted child kidnapping, and enticing a minor over the internet.[6] At a preliminary hearing at which Detective testified, the State sought bindover on all five counts, and Smith challenged the State's motion as to three of them (attempted rape, attempted sodomy, and attempted kidnapping). In particular, Smith argued that the State had failed to present sufficient evidence to establish that he took a "substantial step" toward committing any of the attempt

---

5. Detective later clarified that Smith "blinked" by flashing his headlights on and off.

6. In a different case, Smith was charged with additional crimes related to the subsequent discovery of child pornography on the phone police seized from Smith when he was arrested. Those charges are not at issue in this appeal.

offenses. Following briefing and oral argument, the district court, acting as magistrate, bound Smith over for trial on all charges, rejecting Smith's challenge to the bindover.

¶6     Later, Smith filed a motion asking the court to dismiss all charges, asserting that—if he had committed the offenses— Detective had, as a matter of law, entrapped him into doing so. Before ruling on the motion, the court held another evidentiary hearing at which Detective offered additional testimony. At this hearing, Detective discussed the various "outs" he had provided to Smith during their chat. An "out," Detective explained, is an attempt to give chat participants an opportunity to disengage themselves from the conversation, especially after learning that the person with whom they are communicating is underage. He (and another law enforcement witness) explained that most people disengage when they discover they are communicating with a minor in an adult chat room, and some of them even reprimand the youth or report the youth to website administrators. Detective identified several points during his online conversation with Smith that he considered "outs," including the following: when Detective stated that his persona was thirteen years old; when he stated that his persona was a runaway; when he stated that his persona wanted a ride out of state; and when his persona told Smith to "[f]uck off." The witnesses noted that Smith did not take any of the "outs" offered him, but continued to engage in the conversation. After the hearing, and after additional briefing and argument, the court denied Smith's motion to dismiss.

¶7     After the denial of both motions, Smith entered into a conditional plea agreement with the State. For his part, Smith agreed to plead guilty to attempted sodomy of a child, attempted child kidnapping, and enticement of a minor over the internet. In return, the State agreed to dismiss the two other charges (for attempted rape and attempted sexual exploitation of a minor), and agreed to make certain sentencing recommendations to the

court. As part of the plea agreement, Smith reserved the right to appeal the district court's bindover order as well as the court's ruling denying his motion to dismiss.[7]

## ISSUES AND STANDARDS OF REVIEW

¶8     Smith now appeals, and asks us to consider the two issues he reserved in his conditional plea. First, he contends that the district court, acting as magistrate, erred in binding him over for trial on three of the attempt charges. "A decision to bind over a criminal defendant for trial presents a mixed question of law and fact and requires the application of the appropriate bindover standard to the underlying factual findings." *State v. Prisbrey*, 2020 UT App 172, ¶ 18, 479 P.3d 1126 (quotation simplified). "In this context, appellate courts give limited deference to a magistrate's application of the bindover standard to the facts of each case." *Id.* (quotation simplified); *see also State v. Ramirez*, 2012 UT 59, ¶ 7, 289 P.3d 444.

¶9     Second, Smith argues that the district court erred by denying his motion to dismiss in which he asserted that he had been entrapped as a matter of law. "An entrapment ruling involves a mixed question of law and fact." *State v. Hatchett*, 2020 UT App 61, ¶ 10, 462 P.3d 1288. "When considering a district court's entrapment determination, we review factual findings for clear error and legal conclusions for correctness." *State v. Hernandez*, 2020 UT App 58, ¶ 4, 462 P.3d 1283.

---

7. The ability to enter a conditional guilty plea was first recognized in *State v. Sery*, 758 P.2d 935 (Utah Ct. App. 1988), but is now codified in rule 11(j) of the Utah Rules of Criminal Procedure.

ANALYSIS

I

¶10   Smith first argues that the district court, acting as magistrate, erred in binding him over for trial on three of the attempt charges, asserting that it was "not reasonable to infer from [the] evidence" that he had taken "the substantial step necessary" for conviction of an attempt to commit the charged crimes. We disagree.

¶11   While the State bears the burden of establishing the existence of probable cause at a preliminary hearing, *see State v. Lopez*, 2020 UT 61, ¶ 46, 474 P.3d 949, "that burden is relatively low," *State v. Prisbrey*, 2020 UT App 172, ¶ 21, 479 P.3d 1126 (quotation simplified). In fact, "to justify binding a defendant over for trial, the prosecution need not present evidence capable of supporting a finding of guilt beyond a reasonable doubt. Nor is the prosecution required to eliminate alternative inferences that could be drawn from the evidence in favor of the defense." *State v. Ramirez*, 2012 UT 59, ¶ 9, 289 P.3d 444 (quotation simplified). Instead, "all that is required is reasonably believable evidence—as opposed to speculation—sufficient to sustain each element of the crimes in question." *Id.* (quotation simplified). In other words, a magistrate should bind a defendant over for trial if there is sufficiently credible evidence "to support a reasonable belief that an offense has been committed and that the defendant committed it." *State v. Schmidt*, 2015 UT 65, ¶ 17, 356 P.3d 1204 (quotation simplified). And when evaluating factual contentions to support bindover, the "magistrate must view all evidence in the light most favorable to the prosecution and must draw all reasonable inferences in favor of the prosecution." *State v. Merrill*, 2012 UT App 3, ¶ 9, 269 P.3d 196 (quotation simplified).

¶12   Utah's attempt statute instructs that "a person is guilty of an attempt to commit a crime if he: (a) engages in conduct constituting a substantial step toward commission of the crime;

and (b) intends to commit the crime." Utah Code Ann. § 76-4-101(1) (LexisNexis 2017). In this context, our legislature has determined that "conduct constitutes a substantial step if it strongly corroborates the actor's mental state." *Id.* § 76-4-101(2). Our supreme court, interpreting this statute, has explained that a substantial step requires "significant conduct" in the form of an "overt act." *See State v. Arave*, 2011 UT 84, ¶ 30, 268 P.3d 163 (quotation simplified). And that act must be "something more than mere preparation"; it must be "a tangible step toward commission of a crime that transcends intent, yet fails to culminate in its planned accomplishment." *Id.* (quotation simplified).

¶13 The attempt crimes at issue here—the ones for which Smith challenges the district court's bindover decision—are attempted rape of a child, attempted sodomy on a child, and attempted child kidnapping. "A person commits rape of a child when the person has sexual intercourse with a child who is under the age of 14." Utah Code Ann. § 76-5-402.1(1) (LexisNexis 2017). "A person commits sodomy upon a child if the actor engages in any sexual act upon or with a child who is under the age of 14, involving the genitals or anus of the actor or the child and the mouth or anus of either person." *Id.* § 76-5-403.1(1). And a person "commits child kidnapping if the [person] intentionally or knowingly, without authority of law, and by any means and in any manner, . . . transports a child under the age of 14 without the consent of the victim's parent or guardian." *Id.* § 76-5-301.1(1).

¶14 Smith does not dispute that he intended to engage in intercourse and oral sex with what he thought was a 13-year-old girl. Indeed, he told officers after his arrest that he "wanted to have blow jobs and sex" with the girl. And Smith had arranged to transport the girl to California, without "authority of law" and without the permission of her parents or guardian. Despite this (and other) evidence tending to corroborate his mental state, Smith nevertheless argues that it all amounts to nothing more

than "mere solicitation" or "mere preparation," and therefore does not constitute a "substantial step" toward commission of the charged crimes. In support of his argument, Smith relies principally on two cases: *State v. Arave*, 2011 UT 84, and *State v. Johnson*, 821 P.2d 1150 (Utah 1991).

¶15 In *Arave*, the defendant approached an 11-year-old boy and offered to pay him $20 if he would agree to let Arave perform oral sex on him. *See* 2011 UT 84, ¶ 4. Arave had been fixated on the child for approximately one month prior to the encounter, and upon seeing him ride up and down the street on his skateboard, he decided to approach him with the explicit offer. *Id.* ¶¶ 4–5. The child did not agree to Arave's proposal, and "rode home on his skateboard in tears." *Id.* ¶ 5. Arave did not attempt to stop the child from leaving, and did not press the matter further. *Id.* On these facts, a jury convicted Arave of attempted sodomy on a child, but our supreme court reversed, holding that "[w]ithout additional preventive action—moving to block [the child's] escape, take his skateboard, or otherwise restrain him—Arave did nothing beyond what most any defendants would do when committing a crime of solicitation." *Id.* ¶ 32. The court noted that any "face-to-face solicitor would necessarily have to find a way to confront or face the person being solicited," and re-emphasized the need for the State to show more—a "substantial step" that "must be something more than a solicitation." *Id.* ¶¶ 31–34. In the court's view, to hold otherwise would "risk erasing the line between" attempt and solicitation. *Id.* ¶ 34. Thus, while Arave had committed criminal solicitation, he took the crime no further after the minor rebuffed his advances and therefore could not be convicted of an attempt crime. *See id.* ¶ 35 ("The undisputed evidence presented to the trial court indicated that, at most, Arave was guilty of solicitation of sodomy on a child.").

¶16 In *Johnson*, the defendant purchased counterfeit methamphetamine from several undercover officers, apparently intending to use the drugs to kill her husband. *See* 821 P.2d at

1154–55. But after purchasing the drugs, Johnson was stopped by police before she could arrive home, and the drugs were never located. *Id.* at 1155, 1157. She was charged with and convicted of attempted murder, but our supreme court reversed her conviction, holding that the "mere purchase of the counterfeit [drugs] from an undercover officer does not go beyond preparation and therefore is not the substantial step needed to support a conviction for attempted first degree murder." *Id.* at 1157. The court emphasized that "mere preparation" to commit a crime is insufficient to constitute an attempt and noted that, in that case, there was "no showing that [Johnson] attempted to administer the substance" to her husband. *Id.* In fact, there was "no evidence as to what she did or attempted to do with [the substance]. She may have used it herself or simply disposed of it." *Id.* Accordingly, without something more to demonstrate a substantial step toward murder, as opposed to a drug-related crime, the court concluded that Johnson had not committed overt acts sufficient to constitute an attempt to commit murder. *See id.*

¶17 The facts of *Arave* and *Johnson* are materially distinguishable from the facts of this case. In *Arave*, the defendant did nothing more than solicit the crime before being rebuffed.[8] *See* 2011 UT 84, ¶ 32. And in *Johnson*, the defendant's actions—buying methamphetamine—were not necessarily corroborative of an intention to commit murder (as opposed to an intention to commit a drug crime). *See* 821 P.2d at 1157. In this case, by contrast, Smith's solicitation—of both oral sex and sexual intercourse—was accepted early in the text conversation, and additional plans were then made, and actions taken, toward completion of the

---

8. Indeed, we suspect *Arave* would have come out differently if Arave's indecent proposal had been accepted (rather than rejected), Arave had thereafter instructed the child to meet him at a convenience store, Arave had traveled to the store, and had been arrested there after again texting the child and flashing his headlights at him in an effort to instruct him to get in his car.

contemplated crimes. Smith arranged to meet the girl at a convenience store and then traveled to the meeting place in his vehicle. Once there, he parked in a position that would allow him to be seen from the front of the store. He then reestablished contact with the girl, told her where he was parked, asked her to stand in a particular spot and to look for blinking headlights so that she could identify his vehicle, and then actually blinked his headlights as a signal and directed the girl to walk toward the headlights and get in the vehicle. Here, Smith did more than merely solicit sexual acts; he took concrete overt steps toward the commission of the charged crimes, steps that certainly corroborate his intention to commit them.

¶18 Smith resists this conclusion in part by asserting that there are "many further steps that would need to be taken before a substantial step would be made toward any of the attempt crimes in this matter, such as meeting up with an actual person, getting in the car with an actual person, physically attempting to engage in sexual activity with that person, or beginning to transport that person with the requisite mindset." But if overt acts of that nature were required, it would presumably be impossible to convict a defendant of an attempted sexual offense in internet sex sting cases involving fictitious victims. Yet the overwhelming majority of courts in other jurisdictions have concluded that individuals caught in internet sex stings, and who travel to an agreed-upon meeting place in anticipation of sexual behavior with a fictitious victim, have taken a substantial step toward commission of sexual crimes. *See, e.g.*, *State v. Reid*, 713 S.E.2d 274, 277 & n.4 (S.C. 2011) (agreeing with "the majority approach," citing cases, and holding that "an agreement to meet a fictitious minor at a designated place and time, coupled with traveling to that location, may constitute evidence of an overt act, beyond mere preparation, in furtherance

of the crime" (quotation simplified)).[9] We find the reasoning of these cases persuasive, and in keeping with existing Utah case law regarding the meaning of "substantial step."

---

9. Most other courts have reached the same conclusion on similar facts. *See United States v. Brand*, 467 F.3d 179, 204 (2d Cir. 2006) ("Brand took a 'substantial step' towards the completion of the crime because [he] actually went to . . . the meeting place he had established with [the fictitious girl]."), *abrogated on other grounds by United States v. Cabrera*, 13 F.4th 140 (2d Cir. 2021); *United States v. Munro*, 394 F.3d 865, 870 (10th Cir. 2005) ("Munro took a substantial step towards completion of the crime by actually going to the prearranged meeting place."); *United States v. Farner*, 251 F.3d 510, 513 (5th Cir. 2001) (holding that a defendant took a substantial step toward committing a crime by arranging and traveling to meet a fictitious minor); *Kirwan v. State*, 96 S.W.3d 724, 728–31 (Ark. 2003) (similar holding); *State v. Shah*, 39 A.3d 1165, 1171 (Conn. App. Ct. 2012) (holding that, after engaging in a sexually explicit conversation with a supposed child online, "travel[ing] to a prearranged place with the intent of meeting that child" could constitute a "substantial step" toward completing various sex crimes); *State v. Glass*, 87 P.3d 302, 306–07 (Idaho Ct. App. 2003) (holding that arranging a meeting place for sexual activity with a purported minor was an overt act sufficient to constitute an attempt); *People v. Scott*, 740 N.E.2d 1201, 1208 (Ill. App. Ct. 2000) (noting that it is "not necessary for the defendant to commit an act of a sexual nature with the fictional intended victim in order to find that the defendant had completed a substantial step," and holding that the defendant—who arranged to meet a fictitious minor and then drove to the agreed-upon location—had "completed a substantial step towards the commission of predatory criminal sexual assault"); *State v. Tarbay*, 157 Ohio App. 3d 261, 2004-Ohio-2721, 810 N.E.2d 979, at ¶¶ 18–22 (holding that arranging to meet a fictitious minor and then

(continued…)

¶19     In this case, the substantial overt actions Smith took went well beyond mere solicitation or preparation, and were strongly corroborative of his intention to transport a 13-year-old girl without authority or parental permission, and to engage in oral sex and sexual intercourse with the girl. *See* Utah Code Ann. § 76-4-101(2) ("[C]onduct constitutes a substantial step if it strongly corroborates the actor's mental state."). Thus, there existed sufficiently credible evidence to support a reasonable belief that Smith committed the attempt crimes with which he was charged. *See State v. Schmidt*, 2015 UT 65, ¶ 17, 356 P.3d 1204. Accordingly, the magistrate did not err in ordering Smith bound over for trial on the attempt charges.

II

¶20     Second, Smith contends that the district court erred by denying his motion to dismiss, in which he asserted that he had—

---

traveling to the meeting place constituted a substantial step toward commission of a crime); *State v. Townsend*, 57 P.3d 255, 262 (Wash. 2002) (holding that engaging in sexual discussions with a fictitious minor, arranging to meet, and then traveling to the meeting place constituted a substantial step toward the commission of a crime). Some other courts have reached different conclusions on similar but not identical facts, *see, e.g.*, *Commonwealth v. Bell*, 917 N.E.2d 740, 748 (Mass. 2009), but some of those cases have since been overruled or superseded, either by subsequent case law or by statute, *see, e.g.*, *Berger v. State*, 259 So. 3d 933, 936 (Fla. Dist. Ct. App. 2018) (overruling *State v. Duke*, 709 So. 2d 580 (Fla. Dist. Ct. App. 1998), and holding that "a defendant commits an overt act in furtherance of the crime of attempted sexual battery where . . . the defendant travels to and arrives at an agreed upon location" to meet a fictitious minor for sex); *B.T.E. v. State*, 108 N.E.3d 322, 333 (Ind. 2018) (noting that *State v. Kemp*, 753 N.E.2d 47 (Ind. Ct. App. 2001), had been "superseded by statute" and "disapprov[ing]" of that case's analysis).

as a matter of law—been entrapped by police into committing the crimes. Issues related to entrapment are usually reserved for the factfinder to resolve. *See State v. Hatchett*, 2020 UT App 61, ¶ 10, 462 P.3d 1288 ("Only when reasonable minds could not differ can [the court] find entrapment as a matter of law." (quotation simplified)); *see also State v. Hernandez*, 2020 UT App 58, ¶ 6, 462 P.3d 1283 (stating that motions to dismiss criminal cases on entrapment grounds should be granted only where "an entrapment defense . . . is sure to leave *all* reasonable minds reasonably doubting whether the commission of the offense was the product of a defendant's inclination"). Indeed, "if reasonable minds could differ on whether or not entrapment occurred, the court must deny" a defendant's motion to dismiss "and allow the issue of entrapment to go to the jury." *State v. Dickerson*, 2022 UT App 56, ¶ 21 (quotation simplified). In our view, the district court correctly concluded that this case was not one of those exceptional cases in which entrapment issues should be taken from the jury, and therefore did not err in denying Smith's motion to dismiss.

¶21 Under Utah law, "[e]ntrapment occurs when" law enforcement officers (or someone acting under their direction) "induce[] the commission of an offense . . . by methods creating a substantial risk that the offense would be committed by one not otherwise ready to commit it." Utah Code Ann. § 76-2-303(1) (LexisNexis 2017). However, our legislature has specified that "[c]onduct merely affording a person an opportunity to commit an offense does not constitute entrapment." *Id.*

¶22 Thus, a key question posed by our entrapment statute is whether the defendant was "otherwise ready to commit" the crimes in question. *See id.* And an important related question is whether police conduct merely afforded the defendant an opportunity to commit offenses he was already otherwise inclined to commit. *See Dickerson*, 2022 UT App 56, ¶ 34 (quoting the governing statute, and stating that the "statutory question[s]" are "whether the police methods created a 'substantial risk that the

offense would be committed by one not otherwise ready to commit it,' or whether those methods 'merely afford[ed] a person an opportunity to commit an offense' that the person was 'otherwise ready to commit'"). "In other words, we ask whether the government's methods create a substantial risk of inducing the commission of a crime despite a person's lack of initiative or desire to commit it." *Id.* ¶ 35 (quotation simplified). In this context, we recently stated that—although we may not ordinarily consider a defendant's prior crimes or general predisposition to commit the offense—a "defendant's reactions to the government inducement . . . are highly relevant" in answering the pertinent statutory questions. *See id.* ¶¶ 27–29, 34. Other factors to consider include "the transactions leading up to the offense" and "the interaction[s] between the agent and the defendant." *Id.* ¶ 36 (quotation simplified).

¶23     In interpreting the entrapment statute and in considering these factors, "our supreme court has held that a defendant was entrapped as a matter of law in only two types of cases." *Id.* ¶ 37. The first category consists of cases involving "improper police conduct in which" police apply "persistent pressure or persistently pursued the defendant to commit the crime." *Id.* (quotation simplified) (identifying *State v. Sprague*, 680 P.2d 404 (Utah 1984), and *State v. Kourbelas*, 621 P.2d 1238 (Utah 1980), as representative examples). The second category consists of cases involving "appeals based on sympathy, pity, or close personal friendships, or offers of inordinate sums of money." *Id.* (quotation simplified) (identifying *State v. Kaufman*, 734 P.2d 465 (Utah 1987), and *State v. Taylor*, 599 P.2d 496 (Utah 1979), as representative examples). This case does not fall into either one of these two categories of cases.

¶24     First, Detective's interactions with Smith were not coercive, and he did not subject Smith to any improper pressure. Smith initiated the chat by responding to Detective's post, and was the one to re-initiate communication after various pauses or lulls,

asking things like "?? So" and "Hello?". Even after discovering that the girl was thirteen years old, Smith continued to press the matter, repeatedly asking for explicit photos and raising the issue of repayment for his willingness to drive the girl to California. Indeed, Detective gave Smith numerous opportunities to withdraw from the conversation, a factor that we have previously determined to be important. *See Dickerson*, 2022 UT App 56, ¶ 40 (stating that "a defendant is not entitled to acquittal as a matter of law under an entrapment theory where he has actively pursued the commission of a crime despite opportunities to withdraw," and that a defendant who does not avail himself of these opportunities to withdraw has indicated that his "actions were freely and voluntarily committed" and "not induced by government conduct" (quotation simplified)); *see also State v. Torres*, 2000 UT 100, ¶ 14, 16 P.3d 1242 (stating that the defendant's "willingness to commit the crime [was] illustrated by his persistent, and eventually successful, attempts to get the drugs to the informant," despite "several opportunities to back out of [the] drug deal"); *State v. Hernandez*, 2020 UT App 58, ¶¶ 11–12, 462 P.3d 1283 (noting that the defendant had "an opportunity to desist" from solicitation of a prostitute when the undercover detective rejected "his initial low-ball offer," but that the defendant persisted in engaging the detective with an offer "to engage in a sex act").

¶25 The first significant "out" that Detective offered Smith was simply telling him that the fictitious girl was thirteen; as the State's witnesses testified, most individuals readily take that particular opportunity to disengage from the conversation. Smith didn't. Later, Detective simply asked Smith for help, including money to buy food, even asking Smith if he knew "anyone to help me," thus offering Smith a way to assist without engaging in any criminal activity. Smith redirected the conversation back to sexual topics, asking her what she meant when she said she would "do whatever," and asking her to send him "full body nude" photos. Detective also twice used language that could have been

construed as ending the conversation, once telling Smith "K thanks" after he asked for nude photos and she refused to send them, and once telling Smith to "[f]uck off." Smith did not avail himself of those opportunities to end the conversation either, but instead continued to press the matter by asking for photos as "proof" that the girl was "legit." As in *Dickerson*, Detective gave Smith "multiple opportunities to back out," and Smith took none of them, which indicated his "willingness to commit the crime." *See* 2022 UT App 56, ¶¶ 40–41 (quotation simplified).

¶26 Smith's response to the police activity in this case is thus much more like *Dickerson* and *Hatchett* than it is like *Kourbelas*. In *Dickerson*, the defendant responded to a profile posting on an internet website, and continued the conversation despite learning that the "girl" was underage and even after being given multiple opportunities to disengage. *See* 2022 UT App 56, ¶¶ 4, 40–44. In *Hatchett*, the defendant placed an advertisement on an internet site looking for an "18–25 year old guy to party and play with," and an undercover detective posing as a boy who was "almost 14" years old responded. *See* 2020 UT App 61, ¶¶ 2–3. The defendant continued the conversation, even after discovering the boy's age, and re-initiated the conversation after various long pauses. *Id.* ¶ 4. In *Kourbelas*, by contrast, our supreme court reversed the defendant's conviction because the agent repeatedly and persistently pestered the defendant, even after long multi-day pauses, to sell him drugs. *See* 621 P.2d at 1239–40.

¶27 In this case, as in *Dickerson*, it was Smith who consistently pursued the girl, "not the other way around," and "he did so despite knowing her age and having multiple opportunities to change course." *See* 2022 UT App 56, ¶ 44. The facts of this case simply do not reveal the sort of inappropriate pressure on the part of Detective that would amount to entrapment as a matter of law. *See id.* ¶ 40 ("A defendant is not entitled to acquittal as a matter of law under an entrapment theory where he has actively pursued the commission of the crime despite opportunities to withdraw.").

¶28 Second, the facts of this case do not include the sort of "personalized high-pressure tactics or appeals to extreme vulnerability" that our supreme court has viewed as problematic. *See State v. Martin*, 713 P.2d 60, 62 (Utah 1986). "Extreme pleas of desperate illness or appeals based primarily on sympathy, pity, or close personal friendship, or offers of inordinate sums of money, are examples, depending on an evaluation of the circumstances in each case, of what might constitute prohibited police conduct." *State v. Taylor*, 599 P.2d 496, 503 (Utah 1979). In *Taylor*, for instance, the court held that the defendant was entrapped as a matter of law because a police informant pleaded with him to help her locate drugs to avoid the "agonies of withdrawal" that she was allegedly experiencing as a recovering addict. *See id.* at 503–04. And in *Kaufman*, the court found it problematic when an undercover agent, who was posing as a "divorced mother of six children who was having hard times," convinced the defendant to purchase stolen property. *See* 734 P.2d at 468.

¶29 Nothing akin to that is present in this case. Smith did not know the girl (she was, after all, fictitious), and so there existed no pre-existing relationship that might have been leveraged for friendship's sake. Detective did mention that the girl had run away from home and asked for money, but these facts were offered not as a plea for sympathy or pity but as a reason why the girl would want a ride to California and be willing to perform sex acts. As in *Dickerson*, Detective "did [not] make any offer that a person not otherwise ready to commit the crime would be hard-pressed to refuse," and he "did nothing to induce [Smith's] participation beyond posing as a thirteen-year-old girl who was willing to meet him." *See* 2022 UT App 56, ¶ 46 (quotation simplified). Detective's persona, like the persona in *Dickerson*, was "hesitant and noncommittal," and Smith agreed to meet the girl for sex "without being badgered, pressured [or] coerced." *See id.* (quotation simplified). In short, Detective "did not employ inducements that would have been, as a matter of law, sufficient

to induce an ordinary person, not otherwise inclined, to solicit sex from a thirteen-year-old." *See id.* ¶ 47 (quotation simplified).

¶30    Under the circumstances presented here, the district court correctly denied Smith's motion to dismiss. The facts simply do not amount to entrapment as a matter of law. The question of entrapment, in this case, was one that should have been presented to the jury for consideration, and the court did not err by declining Smith's invitation to take the question from the jury. Smith elected to enter a conditional guilty plea rather than present his entrapment defense to a jury. Because he has not prevailed on appeal, he is not entitled to withdraw that plea. *See* Utah R. Crim. P. 11(j).

## CONCLUSION

¶31    The district court, acting as magistrate, did not err by ordering Smith bound over for trial on the attempt charges, because sufficient evidence existed to support a reasonable belief that Smith took a "substantial step" toward commission of the attempt crimes with which he was charged. And the court did not err by denying Smith's motion to dismiss on entrapment grounds.

¶32    Affirmed.

_____