2026 UT App 38

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellant,
*v.*
SHAWN PHILLIP MURPHY,
Appellee.

Opinion
No. 20240145-CA
Filed March 19, 2026

Third District Court, Salt Lake Department
The Honorable Patrick Corum
No. 221907614

Derek E. Brown and Natalie M. Edmundson,
Attorneys for Appellant

Freyja Johnson and Hannah Leavitt-Howell,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN M. HARRIS concurred.

MORTENSEN, Judge:

¶1 Shawn Phillip Murphy was charged with aggravated sexual abuse and sodomy on a child for incidents that had occurred many years prior involving the son (Jonathan) of one of Murphy's former close friends (Mother).[1] The magistrate, citing lack of evidence at a preliminary hearing to establish probable cause that Murphy committed the alleged abuse, declined to bind Murphy over for trial. The State appeals, claiming the magistrate misapplied the bindover standard. We disagree and affirm the magistrate's decision.

---

1. We use a pseudonym for the then-minor in this case.

BACKGROUND

¶2     The allegations of abuse in this case came to light when Jonathan, who was fifteen years old at the time, was taken to an emergency room following a mental health episode. During a subsequent interview at the Children's Justice Center (CJC), Jonathan described being abused when he was younger while being babysat for several hours at night when Mother worked an evening shift. Jonathan identified his abuser as a male babysitter named "Shane." Based on allegations made in the CJC interview, the State sought to bind Murphy over on two counts of sodomy on a child and one count of aggravated sexual abuse of a child. The magistrate held a preliminary hearing at which Jonathan and Mother testified.

¶3     At the preliminary hearing, Jonathan—who was then eighteen—testified as follows:

- *Identification of the babysitter:* Jonathan said that the babysitter was a man named "Shawn" who was a "very close friend" of Mother and who regularly abused him. Though Murphy was present at the hearing, Jonathan was unable to identify him in court as the person who babysat or abused him. When defense counsel asked Jonathan why he previously said the babysitter's name was "Shane" in the CJC interview, Jonathan explained that it was a "[s]imple mispronunciation" and that he had "just generally forgot what his name was." Jonathan recalled that when he reported the abuse after the hospital episode, Mother talked to him "about going to be babysat" and about who babysat him at the relevant time. Specifically, Jonathan testified that Mother "reminded [him] what [the babysitter's] name was and who [the babysitter] was."

- *Jonathan's age:* Jonathan estimated that he was seven or eight when Mother would leave him at the babysitter's house while she worked. Regarding Jonathan's age,

defense counsel asked him, "[D]uring [the CJC] interview you tell the law enforcement officer that you were actually four years old when you think this happened. Do you remember telling him that?" Jonathan responded, "I do not." And defense counsel followed up with this question: "As you sit here today, do you know if you went to that babysitter's house when you were four, when [you were] five or six, seven or eight? Can you nail down that time more clearly?" Jonathan responded, "I really can't."

- *Time and duration of babysitting:* Jonathan said that he stayed at the babysitter's house for six to seven hours at a time while Mother worked at night, stating, "[G]enerally it was nighttime and my mom would leave me there at his house and go off to work." He specifically stated that Mother would "drop [him] off at [the babysitter's] home to go to work every night." He further said the babysitter never took him anywhere else, including daycare.

- *Initial disclosure of the abuse:* Jonathan recalled first disclosing the abuse to Mother when he was about twelve years old after his memory was triggered when he saw a photograph of the babysitter. He said that Mother wanted to report it then but that he "was a bit iffy on the situation on whether or not [he] wanted to," so no report was made at that time.

- *Description of the abuse:* Jonathan testified that the babysitter abused him every time Mother would drop him off at the babysitter's house. He said the babysitter would take him to an upstairs bedroom, lock the door, and engage in mutual oral sex: "He would undo both his and my pants and he would have me place his penis in my mouth and he would have me bite down and shake my head as hard as I could [and] he would do the same thing to me afterwards." Jonathan also recalled an instance where the babysitter

manipulated Jonathan's penis with his hand for about five seconds before placing it in his mouth.

¶4      For her part, Mother testified that Murphy was a friend who babysat Jonathan, but her recollection of the situation differed from Jonathan's in several ways.

- *Identification of the babysitter:* Mother confidently identified Murphy in court and asserted he had been Jonathan's only babysitter. Mother stated that Jonathan spent every other weekend with his father.[2]

- *Jonathan's age:* Mother testified that Murphy babysat Jonathan only between August and December 2009, when Jonathan was about three or four years old.

- *Time and duration of babysitting:* Mother stated that the babysitting occurred in the mornings and lasted for only about one hour each day. Murphy would pick them up, drive Mother to the TRAX station so she could travel to work, and then watch Jonathan until his daycare facility opened at 7:00 a.m.

- *Initial disclosure of abuse:* Mother testified that Jonathan told her—in what she described as a "constant conversation" beginning when he was about seven years old and lasting until he was a teenager—that something happened with his babysitter. Mother said that Jonathan's first comment came after she asked him if he remembered Murphy—with no indication that a photograph triggered the memory— and Jonathan said that he did not like Murphy because Murphy "used to show his penis" to him. Mother never reported the allegation because she "didn't think . . . a

---

2. No testimony was given about babysitters who might have been employed while Jonathan was in the care of his father.

decision like that" was up to her since she "wasn't the one who was sexually abused."

¶5 Following the testimony, the State asked the magistrate to bind Murphy over on two counts of sodomy on a child and one count of aggravated sexual abuse of a child. The magistrate noted that the case was a close call on bindover and, rather than ruling immediately, indicated that he wanted to re-listen to the testimony and conscientiously consider it before deciding. The magistrate noted that while it was unusual to take a bindover decision under advisement, that is what he felt he needed to do.

¶6 The magistrate ultimately declined to bind Murphy over for trial. While the magistrate found that probable cause supported the allegation that Jonathan had been sexually abused, he found that there was no credible evidence that Murphy committed the abuse. The magistrate noted, "[T]he element in question is identity. . . . The evidence here is so wholly inconsistent as to the when and the who as to render the testimony regarding identity just simply incredible and as wholly lacking and incapable of supporting a reasonable inference that the defendant is the person that [Jonathan] is talking about." The magistrate observed that Jonathan could not identify Murphy in court, even though "there was not a whole lot of choices" of people in the courtroom—with Murphy and the prosecutor being "the only two real possibilities." The magistrate found that the discrepancies involving the timing and duration of the abuse and Jonathan's age to be "significant" because they cast serious doubt on the identity of the alleged abuser. Specifically, the magistrate found himself "hung up on" the following differences in Jonathan's and Mother's testimony:

- seven to eight years old versus three to four years old when the abuse occurred;

- six to seven hours versus one hour for the duration of the babysitting sessions;

- the abuse occurring at night versus in the morning; and

- Jonathan remaining at the babysitter's house all night versus being taken to daycare.

These circumstances, the magistrate concluded, "do not go together without more, without some kind of explanation as to why, why the discrepancy." He also found that Mother "was not credible with a lot of the details" and that "she was fairly scattered with a lot of the details surrounding the circumstances and was contradictory in some important ways with [Jonathan's] testimony." Thus, the magistrate concluded that while Jonathan "testified very credibly that something happened, . . . the totality of the testimony does not support a reasonable inference that Mr. Murphy is the person that did those things to him." Given these inconsistencies, the magistrate ruled that the State had "not presented credible evidence to support a bindover," and he accordingly dismissed the case against Murphy. The State appeals the magistrate's decision to deny bindover.

ISSUE AND STANDARD OF REVIEW

¶7     The sole issue on appeal is whether the magistrate erroneously refused to bind Murphy over on two counts of sodomy on a child and one count of aggravated sexual abuse of a child. "A decision to bind over a criminal defendant for trial presents a mixed question of law and fact and requires the application of the appropriate bindover standard to the underlying factual findings." *State v. Smith*, 2022 UT App 82, ¶ 8, 514 P.3d 620 (cleaned up), *aff'd*, 2024 UT 13, 548 P.3d 874. "In this context, appellate courts give limited deference to a magistrate's application of the bindover standard to the facts of each case." *State v. Prisbrey*, 2020 UT App 172, ¶ 18, 479 P.3d 1126 (cleaned up).

ANALYSIS

¶8     "A defendant may be bound over for trial only if the prosecution produces evidence sufficient to demonstrate probable cause that the charged crimes were committed." *State v. Ramirez*, 2012 UT 59, ¶ 8, 289 P.3d 444 (cleaned up); *accord State v. Virgin*, 2006 UT 29, ¶ 20, 137 P.3d 787; *see also* Utah R. Crim. P. 7B(b) ("If from the evidence the magistrate finds probable cause to believe that the crime charged has been committed and that the defendant has committed it, the magistrate must order that the defendant be bound over for trial."). This requirement "is aimed at ferreting out groundless and improvident prosecutions, relieving the accused from the substantial degradation and expense incident to a modern criminal trial when the charges against him are unwarranted or the evidence insufficient." *Ramirez*, 2012 UT 59, ¶ 8 (cleaned up).

¶9     As our supreme court has explained,

> The key word that elevates magistrates' role beyond that of a mere rubber stamp for the prosecution is "reasonable." Indeed, the prosecution has not carried its burden if it merely shows belief rather than *reasonable* belief. Inclusion of the word "reasonable" in this standard suggests that, at some level of inconsistency or incredibility, evidence becomes incapable of satisfying the probable cause standard. When that is the case, magistrates are empowered to deny bindover.

*Virgin*, 2006 UT 29, ¶ 22. And "although magistrates may not prefer one piece of credible evidence over a conflicting piece of credible evidence in making their bindover determination, they may disregard or discount as incredible evidence that is not capable of supporting a reasonable belief as to an element of the prosecutor's claim." *Id.* ¶ 25. This means that "when evidence becomes so contradictory, inconsistent, or unbelievable that it is

unreasonable to base belief of an element of the prosecutor's claim on that evidence, magistrates need not give credence to that evidence." *Id.* But "to justify binding a defendant over for trial, the prosecution need not present evidence capable of supporting a finding of guilt beyond a reasonable doubt. Nor is the prosecution required to eliminate alternative inferences that could be drawn from the evidence in favor of the defense." *State v. Smith*, 2022 UT App 82, ¶ 11, 514 P.3d 620 (cleaned up), *aff'd*, 2024 UT 13, 548 P.3d 874.

¶10 Accordingly, a magistrate may deny bindover "when the evidence, considered under the totality of the circumstances, is wholly lacking and incapable of reasonable inference to prove some issue which supports the prosecution's claim." *State v. Prisbrey*, 2020 UT App 172, ¶ 22, 479 P.3d 1126 (cleaned up). In other words, "a magistrate may properly deny bindover where the facts presented by the prosecution provide no more than a basis for speculation." *Id.* (cleaned up). While "the line separating speculation from reasonable inference can at times be faint," the two are distinct. *Id.* ¶ 23 (cleaned up). "An inference is a conclusion reached by considering other facts and deducing a logical consequence from them," and speculation entails "the act or practice of theorizing about matters over which there is no certain knowledge at hand." *Id.* (cleaned up). "In short, the difference between an inference and speculation depends on whether the underlying facts support the conclusion." *Salt Lake City v. Carrera*, 2015 UT 73, ¶ 12, 358 P.3d 1067.

¶11 Here, the magistrate struggled to find sufficient evidence that Murphy was the one who perpetrated the abuse of Jonathan. In the magistrate's words, "[T]he element in question is identity. . . . The evidence here is so wholly inconsistent as to the when and the who as to render the testimony regarding identity just simply incredible and as wholly lacking and incapable of supporting a reasonable inference that the defendant is the person that [Jonathan] is talking about." We agree that the magistrate

acted within his limited discretion when he determined that the evidence presented did not "demonstrate probable cause that the charged crimes were committed" by Murphy. *See Ramirez*, 2012 UT 59, ¶ 8 (cleaned up). For the following reasons—and while being cognizant that "magistrates may not prefer one piece of credible evidence over a conflicting piece of credible evidence in making their bindover determination," *see Virgin*, 2006 UT 29, ¶ 25—the magistrate here correctly concluded that the facts presented by the State provided only a speculative basis to support probable cause to conclude that Murphy was the individual who abused Jonathan.

¶12     First, Jonathan was unable to identify Murphy as the perpetrator of the abuse in court even though there were only two potential candidates present in court from whom to choose. Jonathan's inability to identify Murphy as his babysitter—along with the lack of other evidence identifying Murphy as the babysitter during the time that the abuse occurred—does not provide probable cause to conclude that Murphy committed the charged crimes.

¶13     Second, Jonathan's age at the time of the abuse does not support probable cause to believe that Murphy was the abuser. Jonathan first testified that he was about seven or eight when he stayed at the babysitter's house, but when asked if he could "nail down" his age with greater precision, he said that he could not, and he agreed that he could not say if he was four, five, six, seven, or eight years old at the time of the abuse. Mother had testified that Murphy babysat Jonathan when he was about three or four years old. Thus, based on Mother's testimony, there was only a speculative basis to conclude that Murphy was the babysitter during the period of time Jonathan said the abuse happened. Indeed, if Jonathan was to be believed that the abuse happened consistently with his original testimony—when he was seven or eight—then Murphy is actually excluded.

¶14    Third, the time of day Jonathan claimed the abuse occurred excludes Murphy as the babysitter who committed the abuse. Jonathan testified that the abuse occurred at night. Mother testified that Murphy babysat Jonathan in the mornings. If Murphy's babysitting services were limited to the morning hours as Mother testified, he could not have been the person who committed the abuse under Jonathan's version of the events.

¶15    Fourth, the contrasting and inconsistent testimony of Jonathan and Mother about the length of time Jonathan spent with the babysitter excluded Murphy as the offender. The magistrate correctly concluded that there was a significant difference "between being babysat for maybe an hour and six or seven hours." The abusive babysitter Jonathan described cannot have been Murphy since—as Mother testified—Murphy did not supervise Jonathan for so many hours at a stretch.

¶16    Fifth, the circumstances of the babysitting did not indicate that Murphy was the abuser. Jonathan said that the babysitter who abused him did so during the hours he spent at the babysitter's house while Mother worked at night. In contrast, Mother testified that Murphy babysat Jonathan for about an hour after Murphy would pick them up from her residence and drive her to the TRAX station, after which Murphy would drop Jonathan off at daycare. If the accounts given by Jonathan and Mother are both credited, Murphy cannot have been the perpetrator because the role he played does not align with that of the abuser Jonathan described.

¶17    Under these circumstances, the magistrate acted within his limited discretion when he determined that the facts presented required too much speculation regarding Murphy's involvement in the abuse. Even when the magistrate fully credited the testimony provided by both Jonathan and Mother and viewed that evidence in the light most favorable to the prosecution, the State failed to meet its burden. To bind Murphy over, the

magistrate would have been required to disregard significant portions of Jonathan's testimony regarding the specifics of the abuse—an action the court is not permitted to take. *See State v. Jones*, 2016 UT 4, ¶ 13, 365 P.3d 1212 ("The magistrate may disregard or discredit the prosecution's evidence only when it is wholly lacking and incapable of creating a reasonable inference regarding a portion of the prosecution's claim. It is therefore not appropriate for a magistrate to evaluate the totality of the evidence in search of the *most* reasonable inference at a preliminary hearing." (cleaned up)). Thus, fully crediting both Jonathan's and Mother's testimony, the magistrate could only speculate about whether Murphy was the person who committed the acts described by Jonathan—an undertaking beyond the magistrate's authority in this context. *See id.* ("A magistrate has discretion to decline bindover only where the facts presented by the prosecution provide no more than a basis for speculation." (cleaned up)).

¶18 To be clear, this matter did not involve choosing among competing credible evidence, which is not allowed at bindover. *See Virgin*, 2006 UT 29, ¶ 25 ("[M]agistrates may not prefer one piece of credible evidence over a conflicting piece of credible evidence in making their bindover determination . . . ."). Rather, the magistrate was faced with mutually exclusive evidence that was "not capable of supporting a reasonable belief" that Murphy was the babysitter who sexually abused Jonathan. *See id.* For Murphy to have been bound over on the evidence the State produced, the magistrate would have been required to rely on unreasonable inferences moored in unacceptable speculation. Accordingly, the record demonstrates that the magistrate accepted the testimony of Jonathan and Mother rather than ignoring—or attempting to reconcile—conflicting details within that testimony. Since neither Mother nor Jonathan provided sufficient evidence to identify Murphy as the individual who committed the abuse, the State failed to satisfy its burden of producing reasonably believable, non-speculative evidence to

support probable cause to believe that Murphy was the abuser. On the contrary, crediting the testimony of both witnesses, the magistrate had no choice but to conclude that there was insufficient evidence to support a reasonable inference that Murphy was the person who committed the abuse. Consequently, the magistrate acted within his limited discretion in denying bindover.

## CONCLUSION

¶19    The evidence here did not provide probable cause to believe that Murphy was the babysitter who abused Jonathan. Accordingly, the magistrate did not exceed his discretion in declining to bind Murphy over for trial, and we affirm the magistrate's order.

_____