**STATE of Utah, Plaintiff and Appellee,**

v.

**J.D.W., a person under 18 years of age, Defendant and Appellant.**

No. 940286–CA.

Court of Appeals of Utah.

March 2, 1995.

Paul W. Mortensen, Farmington, for Appellant.

Jan Graham and Todd A. Utzinger, Salt Lake City, for Appellee.

Before BENCH, ORME and WILKINS, JJ.

## OPINION

BENCH, Judge:

Appellant J.D.W., a seventeen-year-old minor, appeals from the trial court's determination that J.D.W. was not entrapped into committing a drug offense.

## FACTS

J.D.W. and a friend went to the Layton Hills Mall to buy a musical compact disc. While there, they were approached by officer Dave Wakefield of the Davis Metro Narcotics Strike Force. Wakefield asked if they were interested in a smoke. J.D.W.'s friend asked "smoke what?" and Wakefield made a gesture simulating smoking marijuana. Wakefield told them that he had some marijuana and hashish and that if they were interested they could go outside and look at it. J.D.W. and his friend thereupon followed Wakefield outside. Once outside, J.D.W.'s friend stopped while J.D.W. and Wakefield continued on a short distance further. Wakefield presented J.D.W. a baggy containing marijuana. J.D.W. took the baggy, "separated the buds from the shake" and smelled the contents.[1] Wakefield also offered J.D.W. the hashish, but J.D.W. refused it. J.D.W. asked how much the marijuana cost. Wakefield told him that it was $35. J.D.W. only had a $100 bill and offered to go get change. Wakefield told J.D.W. that he could make change, whereupon J.D.W. paid Wakefield, who then gave J.D.W. the marijuana and the change. Wakefield then arrested J.D.W. for possession of a controlled substance.

J.D.W. was charged in a juvenile court petition with one count of possession of a controlled substance, a class B misdemeanor, in violation of Utah Code Ann. § 58–37–

8(2)(a)(i) (1994). J.D.W. filed a motion to dismiss based on a claim of entrapment. After an evidentiary hearing on J.D.W.'s motion to dismiss, the trial court issued a memorandum decision in which it determined, based on the facts, that J.D.W. was not entrapped. J.D.W. entered a conditional guilty plea in which he preserved his right to challenge the trial court's denial of his motion to dismiss. *See State v. Sery,* 758 P.2d 935, 938–40 (Utah App.1988). The issue on appeal is whether J.D.W. was entrapped, as a matter of law, when he purchased marijuana from an undercover police officer.

## ANALYSIS

J.D.W. asks this court to adopt the entrapment per se rule, that is, anytime the police or their agents provide drugs for sale, then that action automatically constitutes entrapment. *See State v. Kummer,* 481 N.W.2d 437 (N.D.1992). In Utah, however, the entrapment per se rule has never been adopted. *See State v. Beddoes,* 890 P.2d 1 (Utah App.1995). Utah Code Ann. § 76–2–303(1) (1994) provides, in pertinent part:

> Entrapment occurs when a law enforcement officer or a person directed by or acting in cooperation with the officer induces the commission of an offense in order to obtain evidence of the commission ... creating a substantial risk that the offense would be committed by one not otherwise ready to commit it. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

Several factors must be considered in determining whether government action induces criminal activity or, conversely, if it merely affords a person the opportunity to participate in criminal activity. *State v. Taylor,* 599 P.2d 496, 503 (Utah 1979). "[T]he transactions leading up to the offense, the interaction between the agent and the defendant, and the response to the inducements of the agent" must all be evaluated. *Id.* Moreover, "[e]xtreme pleas of desperate illness or

---

1. Wakefield later testified that J.D.W.'s actions indicated that he "had a knowledge of marijuana, that he'd been around it, because somebody who doesn't know about that wouldn't even think [to separate the buds from the shake.]"

appeals based primarily on sympathy, pity, or close personal friendship, or offers of inordinate sums of money, are examples, depending on an evaluation of circumstances in each case, of what might constitute prohibited police conduct." *Id.* Additionally, excessive pressure or goading by an undercover officer might constitute entrapment. *State v. Sprague,* 680 P.2d 404, 406 (Utah 1984). Because entrapment is such a highly fact-intensive defense, we defer to the fact-finder's determination, unless we hold it to be erroneous, as a matter of law. *See State v. Pena,* 869 P.2d 932, 936–38 (Utah 1994); *accord Beddoes,* 890 P.2d at 3.

■ The facts in the record support the trial court's determination that, by merely providing the opportunity for a drug purchase, Wakefield did not engage in any activity that "would be effective to persuade an average person ... to commit the offense." *Taylor,* 599 P.2d at 503.[2] Wakefield did not rely on any type of close, personal relationship to induce J.D.W. to buy the marijuana. *See id.* at 503–04 (holding that defendant's former lover and close friend played on his pity while she apparently withdrew from heroin addiction). Wakefield did not offer J.D.W. inordinate amounts of money, or large quantities of marijuana for an extremely low price. Rather, Wakefield used the market rate to determine the price of the marijuana. Furthermore, Wakefield did not make repeated requests or badger J.D.W. to buy the marijuana. *Cf. Sprague,* 680 P.2d at 406 (holding that agent entrapped defendant by goading defendant and repeatedly requesting drugs from him). J.D.W. immedi-

ately responded positively to Wakefield's offer. Despite the trial court's discomfort about some of Wakefield's actions, the trial court determined that Wakefield did not entrap J.D.W. under the standards set forth by the Utah Legislature.[3] We cannot say, as a matter of law, that J.D.W. was entrapped. We therefore defer to the trial court's resolution of the issue.

Affirmed.

WILKINS, J., concurs.

ORME, Judge (concurring in the result):

Given clear and apparently controlling case law in Utah, I must reluctantly concur in this court's judgment affirming the trial court's ruling on this troublesome entrapment issue. In so doing, I must also note that, like the trial court, I am very concerned about the incident which led to charges in this case.

We have the situation in which an officer, newly assigned to drug enforcement responsibilities, takes marijuana from the police evidence room and goes to a nearby shopping mall where, for a period of some hours, he bothers innocent passers-by, many of whom are in the company of young children, and none of whom has been previously suspected of using drugs or has expressed to the officer any interest in procuring illegal drugs prior to his solicitation. Many of the shoppers were predictably annoyed that an apparent drug dealer would be openly purveying his wares in the common area of the local mall and several complained to mall management.

In what the Legislature has taken pains to characterize as a "drug-free zone," the drug-

---

**2.** On the day of J.D.W.'s drug purchase, Wakefield approached over one hundred people in the mall. No one but J.D.W. made a purchase.

**3.** The trial court was concerned by the fact that Officer Wakefield sold drugs to a juvenile in a "drug-free zone." There is nothing, however, in the statute that precludes such activity as a matter of law. Officers are specifically exempted from the provisions of the statute establishing "drug-free zones" so long as the officers are acting within the scope of their employment. *See* Utah Code Ann. § 58–37–8(12)(b) (1994). J.D.W. did not argue below, that Wakefield was acting outside the scope of his employment. J.D.W. also made no claim that Wakefield had entrapped J.D.W. because he sold drugs to a

person that was not previously suspected of drug activity. Based on the facts and arguments presented at the evidentiary hearing, the trial court ruled that J.D.W. was not entrapped as the defense has been outlined by the legislature. It is not the prerogative of courts to modify the statutory scheme established by the legislature. *See Salt Lake Child & Family Therapy Clinic, Inc. v. Frederick,* 890 P.2d 1017 (Utah 1995). The courts can only give construction to statutes as provided by the legislature. *See Mini Spas, Inc. v. State,* 657 P.2d 1348, 1350 (Utah 1983). Any attempt to change the statutory scheme that allows law enforcement officers to sell drugs to a juvenile in a "drug-free zone" should therefore be addressed to the legislature.

selling officer was not only making a nuisance of himself, but was—but for the cloak of statutory immunity—engaged in a course of trespass, soliciting illegal drug sales, and contributing to the delinquency of minors. It is reprehensible to me that someone charged with upholding the law would set about in this fashion to see if a randomly targeted minor, presented with adequate temptation, is willing to break the law.

I think what the officer did is indefensible. The overall societal cost of such methods is simply too great to justify the arrest of a single juvenile purchaser. I regret that the current state of the law is such that I can do nothing more than fuss about it. My hope is that the Supreme Court will grant certiorari in this case and consider the advisability of adopting some kind of per se entrapment doctrine, *see, e.g., State v. Kummer,* 481 N.W.2d 437, 441–44 (N.D.1992), or consider whether "the conduct of the law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). Alternatively, perhaps the Legislature will see fit to tighten up the "drug-free zone" concept so that such zones are *completely* drug free rather than only free of drugs except those introduced by the "good guys," or, at least, to limit police solicitations of this sort to individuals who have previously been identified as suspected drug users or traffickers.

Subjecting the general public to unwelcome and unsolicited offers to buy drugs is simply not a police method which our society should embrace as a tactic in the war on drugs.