2000 UT 100

**STATE of Utah, Plaintiff and Appellee,**

v.

**Adrian Obispo TORRES, Defendant and Appellant.**

**No. 981611.**

Supreme Court of Utah.

Dec. 22, 2000.

Jan Graham, Att'y Gen., Joanne C. Slotnik, Asst. Att'y Gen., John L. Allan, Salt Lake City, for plaintiff.

Margaret P. Lindsay, Provo, for defendant.

DURHAM, Justice:

## INTRODUCTION

¶ 1 Defendant Adrian Torres was convicted by a jury of distribution of a controlled substance in a drug-free zone, a first-degree felony under Utah Code Ann. § 58–37–8(1)(a)(ii) (Supp.1999). The issue raised on appeal is whether the evidence of entrapment presented to the jury necessarily created a reasonable doubt as to defendant's guilt. We affirm.

## BACKGROUND

¶ 2 Although the evidence at trial was in conflict, we generally resolve all "conflicts in the evidence in favor of the jury verdict" and recite the facts accordingly. *State v. Workman*, 852 P.2d 981, 984 (Utah 1993). Officer Gary Giles, an undercover agent employed by the Utah County Major Crimes Task Force, and Victor Payan, a paid police informant, began working together in the fall of 1997. In mid-September, Payan and defendant met at Payan's Pleasant Grove residence, where defendant had come to discuss a drug transaction with Caesar, a homeless man temporarily residing with Payan. At this time, Payan called Officer Giles to come over to check the license plate of a red truck that defendant was driving. Payan informed Officer Giles that Caesar had told him that the person who drove the red truck was a "big mover of drugs." Officer Giles used the license plate to obtain the name and photo identification of the registered owner, who turned out to be defendant.

¶ 3 Between the time of initially meeting defendant in September and purchasing drugs from him in October, Payan and Caesar visited defendant's home together several times. Payan also visited defendant's home approximately six times by himself. During each visit, Payan and defendant spoke about purchasing and transporting drugs. On at least one occasion, Payan saw drugs at defendant's house. Payan also ate dinner at defendant's house and spoke to defendant several times on the telephone.

¶ 4 In approximately the first week of October, Payan tried to buy heroin from defendant. Defendant was unable to obtain the heroin, so a new deal was arranged for the sale of a pound of methamphetamine for $9000 to be purchased for Payan's "partner from Idaho," Officer Giles.

¶ 5 On October 16, 1997, at approximately 6:45 p.m., defendant paged Payan. Payan called defendant from Officer Giles's cellular phone. Defendant told Payan the drugs had not yet arrived, and that he would page Payan when they did. At approximately 7:30 p.m., Payan received another page from defendant. Because Officer Giles and Payan were involved in another drug transaction,

Payan called defendant and stated that he could not purchase the drugs immediately, but would call defendant when he could. Approximately fifty minutes later, Payan called defendant back. Defendant told Payan that the people with the drugs had left, but that he would try to get them to return. If defendant succeeded in getting the drugs, he stated he would page Payan with three nines—indicating that "the deal was set and ready to go." At approximately 10:30 p.m., defendant paged Payan with three nines and Payan called defendant, who asked Payan to come to defendant's house to purchase the drugs. Officer Giles did not feel comfortable going to defendant's house, so defendant suggested Sharon Elementary School as an alternative meeting spot.

¶ 6 After agreeing to this location, Payan and Officer Giles drove to the school, parked their car, and waited. A red truck carrying three people entered the parking lot. Defendant and the other passenger exited from the passenger side of the truck. The driver drove away. Defendant approached Payan and Officer Giles and initiated small talk. Officer Giles asked defendant where the drugs were and defendant responded that they were coming. Shortly thereafter, the other passenger in the truck walked by and glanced at defendant. Defendant nodded and the passenger deposited a package into Payan's lap. Officer Giles sniffed the package to identify the contents and then gave the "bust signal." Three police cars surrounded defendant and the passenger. The defendant and passenger were apprehended on the spot. Defendant escaped and was later apprehended at his home.

## ANALYSIS

¶ 7 Defendant argues that his convictions should be reversed because the evidence of entrapment necessarily created a reasonable doubt as to his guilt. The affirmative defense of entrapment is statutorily defined in Utah Code Ann. § 76-2-303(1) (1999):[1]

> Entrapment occurs when a peace officer or a person directed by or acting in cooperation with the officer induces the commis-

sion of an offense in order to obtain evidence of the commission for prosecution by methods creating a substantial risk that the offense would be committed by one not otherwise ready to commit it. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

¶ 8 Entrapment is a "highly fact-intensive defense." See State v. J.D.W., 910 P.2d 1242, 1244 (Utah Ct.App.1995). In State v. Taylor, 599 P.2d 496, 500 (Utah 1979), this court adopted an objective standard for entrapment cases, which focuses solely on police conduct, rather than on the defendant's predisposition to commit a crime. See also State v. Udell, 728 P.2d 131, 133 (Utah 1986). To prove the defense of entrapment, the evidence must be sufficient to raise "a reasonable doubt that [the defendant] freely and voluntarily committed the offense." Udell, 728 P.2d at 132 (finding defendant was not entrapped when he sold cocaine to an undercover officer even though defendant had declined to sell cocaine to the same officer on two other occasions, noting that defendant had only declined to sell previously because he was not in possession of cocaine).

¶ 9 In the past, this court has found entrapment where the facts fit the following categories: (1) inducement based on improper police conduct, see State v. Sprague, 680 P.2d 404, 406 (Utah 1984) (finding persistent pressure by an undercover officer may constitute entrapment), and State v. Kourbelas, 621 P.2d 1238, 1240 (Utah 1980) (finding entrapment where undercover officer initiated suggestion of drug purchase and persistently pursued defendant to buy drugs); and (2) "appeals based primarily on sympathy, pity, or close personal friendship, or offers of inordinate sums of money...." Taylor, 599 P.2d at 503 (finding entrapment where defendant and informant lived together and had sexual relations for approximately three months prior to informant becoming involved with police); see also State v. Kaufman, 734 P.2d 465, 468 (Utah 1987) (finding entrapment where attractive undercover officer, pretending to be divorced mother of six chil-

1. For ease of reference, we refer to the current version of the statute and note that it has not been substantially altered since its enactment in 1973.

dren having hard times, induced defendant against his "initiative or desire" to buy what she claimed were stolen goods).

¶ 10 Here, defendant did not have a preexisting relationship with the police informant nor was he persuaded to engage in a drug deal by sympathy, pity, or offers of inordinate sums of money. Defendant nevertheless argues that his case is similar to *Kourbelas* in that he was induced to sell the drugs through improper police conduct. We disagree.

¶ 11 In *Kourbelas,* the police agent met Kourbelas at Lake Powell while helping Kourbelas with a fuel problem. The agent, without any prior knowledge that Kourbelas was involved in drugs, asked if Kourbelas could help him obtain some marijuana. Kourbelas gave the agent his phone number and replied, "I'll see what I can do." *Kourbelas,* 621 P.2d at 1239. The agent called Kourbelas three times, approximately two weeks later. *See id.* Kourbelas never called the agent, although he promised on at least one occasion that he would, but did eventually sell the agent two pounds of marijuana. *See id.*

¶ 12 Unlike *Kourbelas,* defendant in this case was known in the community as a "big mover of drugs." Moreover, defendant initiated and continued to pursue contact with the police informant when he (1) visited the informant's Pleasant Grove residence to discuss a drug transaction with Caesar, (2) first contacted the informant on the night the drugs were sold, and (3) arranged for the drugs to be brought back after they were already en route to Salt Lake City. Thus, this case is easily distinguished from *Kourbelas.*

¶ 13 Defendant's arguments in this case emphasize the fact that there is always an element of deception in entrapment cases, claiming that such deception is inherently unfair. Drug dealing by its very nature, however, requires secrecy. *See State v. Curtis,* 542 P.2d 744, 746 (Utah 1975) (recognizing secrecy involved in criminal activities and noting importance of undercover agents in detection and prosecution of drug traffickers). To allow police and their informants the opportunity to engage in undercover drug buying, they must have some means of gaining the trust of those involved in buying and selling drugs. This requires a delicate balance between actions that merely allow police and their informants to gain the trust of dealers, and actions that would constitute an improper use of governmental power amounting to inducement.

¶ 14 Defendant had several opportunities to back out of this drug deal. His willingness to commit the crime is illustrated by his persistent, and eventually successful, attempts to get the drugs to the informant, despite considerable difficulty. "[W]here it is known or suspected that a person is engaged in criminal activities, or is desiring to do so, it is not an entrapment to provide an opportunity for such person to carry out his criminal intentions." *Curtis,* 542 P.2d at 746. Because of defendant's independent and persistent attempts, we find that his actions were "freely and voluntarily committed," and thus were not induced by the informant's conduct. *Udell,* 728 P.2d at 132. Instead, the informant's conduct merely provided defendant an opportunity to carry out his criminal intentions. Therefore, the evidence of entrapment did not create a reasonable doubt as to the defendant's guilt as a matter of law, and the jury's verdict stands.

¶ 15 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURRANT, and Justice WILKINS concur in Justice DURHAM's opinion.