**2020 UT App 58**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellant,
*v.*
OMAR HERNANDEZ,
Appellee.

Opinion
No. 20190347-CA
Filed April 9, 2020

Third District Court, Salt Lake Department
The Honorable James T. Blanch
No. 181906502

Simarjit S. Gill and Nicole Kunzler Pearce, Attorneys
for Appellant

Alan J. Buividas, Attorney for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and JILL M. POHLMAN concurred.

MORTENSEN, Judge:

¶1　Omar Hernandez was arrested and charged for patronizing a prostitute who was actually an undercover detective. Hernandez filed a motion to dismiss the charge, asserting a defense of entrapment. Following a hearing on the matter, the district court ruled that Hernandez was entrapped as a matter of law and dismissed the case with prejudice. The State appeals. We reverse and remand.

## BACKGROUND

¶2　On June 1, 2018, Hernandez pulled into the secluded portion of a McDonald's parking lot that was frequented by men

seeking prostitutes. Hernandez remained in his car for possibly less than a minute and was approached by an undercover detective.[1] The detective asked Hernandez if he was "looking for a date"—lingo used to offer prostitution services. Hernandez responded in the affirmative and asked her to get into his vehicle. The detective did not do so but asked Hernandez if he had any money. Hernandez indicated that he did. The detective then inquired whether Hernandez wanted "to fuck" or if he just "wanted a blowjob." Hernandez responded that he "wanted to go all out" and "make it worth [her] while"—which the detective understood to mean that he wanted to have sexual intercourse in exchange for money. The detective told Hernandez to show her the money. Hernandez pulled out a five-dollar bill and several ones, prompting the detective to retort, in character, "I'm not going to fuck you for five dollars." Hernandez indicated he had more money, pulled out a fifty-dollar bill, and asked her, "Fifty dollars?" The detective indicated that was acceptable and inquired whether Hernandez had a condom. Hernandez said he did. The detective then directed Hernandez to meet her at a 7-Eleven around the corner to consummate the transaction. Hernandez pulled out of the parking spot and headed in that direction, at which point he was apprehended by the law enforcement take-down team.

¶3 Hernandez was charged with one count of patronizing a prostitute. *See* Utah Code Ann. § 76-10-1303 (LexisNexis 2018). Thereafter, Hernandez filed a motion to dismiss, arguing that the detective entrapped him. After briefing, an evidentiary hearing, additional briefing, and oral argument, the district court granted Hernandez's motion and dismissed the case with prejudice. The court found that the "attractive" detective approached

---

1. When the detective was asked if she could estimate how much time elapsed before she approached Hernandez, she stated, "Maybe several—less than a minute. A minute or two."

Hernandez's car within possibly less than one minute and initiated contact that "creat[ed] a substantial risk that [she would] convince some people who [were] not there for that purpose [of prostitution] to engage in . . . criminal behavior." The court concluded that "a reasonable jury [would] have to entertain at least reasonable doubt about whether or not the entrapment defense applies" and therefore ruled that Hernandez was entrapped as a matter of law. The State appeals.

## ISSUE AND STANDARD OF REVIEW

¶4    The State contends that the district court erred by ruling as a matter of law that Hernandez was entrapped by the detective. When considering a district court's entrapment determination, we review factual findings for clear error and legal conclusions for correctness. *See State v. Torres*, 2000 UT 100, ¶¶ 8–14, 16 P.3d 1242; *State v. Curtis*, 542 P.2d 744, 746–47 (Utah 1975).

## ANALYSIS

¶5    The State contends that the district court erred in determining as a matter of law that the detective entrapped Hernandez, arguing that the facts as found by the district court do not, as a matter of law, amount to entrapment under the statute and our case law. We agree.

¶6    A defendant may assert entrapment as a defense to a charge of criminal conduct by making a written motion, Utah Code Ann. § 76-2-303(4) (LexisNexis 2017), and pointing to some evidence of entrapment, *cf. State v. Tebbs*, 786 P.2d 775, 779 (Utah Ct. App. 1990) ("As a practical matter, a defendant may have to assume the burden of producing some evidence of the affirmative defense if there is no evidence in the prosecution's case that would provide some kind of evidentiary

foundation for an affirmative defense claim." (cleaned up)). The court then hears the evidence on the issue and determines "as a matter of fact and law whether the defendant was entrapped to commit the offense." Utah Code Ann. § 76-2-303(4). After determining the facts, the court must consider whether those facts establish entrapment as a matter of law. *Id.* Entrapment is established as a matter of law when an entrapment defense—asserting the offense was impermissibly induced—is sure to leave *all* reasonable minds reasonably doubting whether the commission of the offense was the product of a defendant's inclination. *See State v. Torres*, 2000 UT 100, ¶ 8, 16 P.3d 1242 ("To prove the defense of entrapment, the evidence must be sufficient to raise a reasonable doubt . . . ." (cleaned up)); *State v. Kaufman*, 734 P.2d 465, 468 (Utah 1987) (observing that an objective standard prompts entrapment as a matter of law when "offenses committed were not the product of defendant's initiative or desire, but were induced by the conduct of the undercover officer"); *State v. Curtis*, 542 P.2d 744, 746 (Utah 1975) ("[T]he only requirement on the defense of entrapment is that it be sufficient to raise a reasonable doubt that the defendant freely and voluntarily committed the crime."); *State v. Haltom*, 2005 UT App 348, ¶ 7, 121 P.3d 42 ("Only when reasonable minds could not differ can we find entrapment as a matter of law."). If a court finds that entrapment occurred as a matter of law, then it must dismiss the case with prejudice. *See* Utah Code Ann. § 76-2-303(5). In contrast, if a court determines that an entrapment defense will leave fewer than all reasonable minds with a reasonable doubt, then the court must deny the motion, but the defendant is able to present the defense to the jury at trial. *See id.*; *see also Haltom*, 2005 UT App 348, ¶ 7.

¶7      "Entrapment occurs when a peace officer . . . induces the commission of an offense in order to obtain evidence of the commission for prosecution by methods creating a substantial risk that the offense would be committed by one not

otherwise ready to commit it." Utah Code Ann. § 76-2-303(1). However, "[c]onduct merely affording a person an opportunity to commit an offense does not constitute entrapment." *Id.* Utah courts have embraced an objective standard focusing on whether the methods used by law enforcement create a substantial risk of inducement. *E.g.*, *Torres*, 2000 UT 100, ¶ 8.[2] Thus, an entrapment determination rests on whether law enforcement officials or their agents use methods which create a substantial risk that a person would be induced or persuaded to commit an offense when that person was not otherwise ready to commit it. *State v. Taylor*, 599 P.2d 496, 503 (Utah 1979); *see Curtis*, 542 P.2d at 746–47 (stating that entrapment doctrine prevents law enforcement from catching "innocent persons [who] may be induced into transgression"). *See generally State v. Cripps*, 692 P.2d 747, 750 (Utah 1984) (explaining the objective standard for an entrapment determination focuses on the government's conduct, not the predisposition of the defendant to commit a crime).

---

2. Utah's embrace of the objective standard has been complicated by a reluctance to depart from the subjective standard. *See State v. Taylor*, 599 P.2d 496, 504 (Utah 1979) (Hall, J., concurring) (positing as valid both the objective and subjective standards). Consequently, our courts have on occasion mingled the objective standard with vestiges of the subjective standard as we have sought to extract and apply valid principles from prior cases analyzed through the subjective lens. Our supreme court's most recent clarification that Utah courts use "an objective standard for entrapment cases," focusing "solely on police conduct, rather than on the defendant's predisposition to commit a crime," *State v. Torres*, 2000 UT 100, ¶ 8, 16 P.3d 1242, was also somewhat diminished by the proximate instruction that "to prove the defense of entrapment, the evidence must be sufficient to raise a reasonable doubt that the defendant freely and voluntarily committed the offense," *id.* (cleaned up).

¶8 In evaluating whether government action impermissibly induces criminal activity, as opposed to permissibly affording the mere opportunity to participate in criminal activity, we consider actions leading up to the offense, interactions between a defendant and the government agent, the nature of the inducements, and the responses to the inducements. *State v. J.D.W.*, 910 P.2d 1242, 1243–44 (Utah Ct. App. 1995). Notably, our courts have previously identified extreme pleas of desperate illness; appeals to sympathy, pity, or close personal relationships; offers of inordinate monetary gain; and excessive or persistent pressure as methods that create a substantial risk of inducing criminal conduct. *See State v. Sprague*, 680 P.2d 404, 406 (Utah 1984); *accord J.D.W.*, 910 P.2d at 1244.

¶9 For example, in *State v. J.D.W.*, an undercover officer randomly approached the defendant and his friend who were at the mall to buy a compact disc. 910 P.2d at 1243. After the officer indicated his ability to sell the youths marijuana, he invited them outside and there showed the defendant the product. *Id.* The defendant evaluated the marijuana by separating the buds from the shake—an action demonstrating familiarity with marijuana—inquired about the price, purchased the marijuana, and took possession of it, whereupon he was arrested for possession. *Id.* We observed that the officer's actions did not rely upon a close personal relationship to induce the defendant's purchase, the offer did not provide an inordinate financial incentive, and the officer did not badger or harass the defendant into making the purchase. *Id.* at 1244. Accordingly, we held that the officer merely provided the opportunity for the drug purchase and possession. *Id.*

¶10 In this case, the district court identified the objective standard, but did not apply it correctly. The court focused its analysis on at least two (maybe three) factors: first, the limited time between Hernandez's arrival and the approach of the detective; second, that "a significant number of people" could be

induced to patronize a prostitute even though "they weren't there for it," if the "opportunity present[ed] itself"; and third, although unclear as to the extent the court actually gave weight to it, the attractiveness of the detective. Based primarily on these factors, the court concluded that Hernandez was entrapped as a matter of law.

¶11 We evaluate whether any of the methods used by the government create a substantial risk of inducing a person to commit an offense when that person was not otherwise inclined to commit it by looking through the lens of the objective standard—focusing on the government's conduct. Using that standard, the following facts are pertinent to a consideration of entrapment. After Hernandez parked his car in an area known for prostitution, the detective—an "attractive" woman dressed in "very dingy," unprovocative attire—approached him after possibly less than a minute and asked him if he was "looking for a date." Only after Hernandez responded in the affirmative did the detective proceed to solicit payment for sex in explicit terms and engage him in negotiation about the type of sex act and the payment amount. The detective offered Hernandez an opportunity to desist when she denied his initial low-ball offer. The detective then accepted Hernandez's second offer of fifty dollars. After confirming Hernandez had a condom, the detective directed him to another area to purportedly consummate the transaction. Based on those facts, we cannot conclude as a matter of law that the government employed prohibited methods of inducement.

¶12 As in *J.D.W.*, the government agent in this case initiated contact and started the discussion about engaging in illegal activity. Like in *J.D.W.*, where the defendant was shopping, Hernandez could have been in the area for a legally permissible purpose such as sending a text, searching for the nearest Starbucks, or thinking about his McDonald's order. But as in *J.D.W.*, when Hernandez was approached and offered the

opportunity to engage in criminal conduct, he expressed interest without impermissible prompting. Hernandez responded to the detective's invitation in a manner demonstrating knowledge of typical prostitution protocol by confirming he was "looking for a date" and inviting the detective into his car without further discussion. As the conversation continued, like in *J.D.W.*, Hernandez participated without being badgered, pressured, coerced by pleas of sympathy or a personal relationship, or tempted with an inordinate monetary incentive. Ultimately, Hernandez made a realistic offer of payment to the detective to engage in a sex act when provided with the mere opportunity to do so. *See J.D.W.*, 910 P.2d at 1244.

¶13 While engaged in its entrapment analysis, the district court stated that the time period that lapsed before the detective approached Hernandez was "a critical factor." But that time period is of little effect given the facts of this case. While the detective's choice to approach a vehicle after only a short lapse of time following its arrival may enable the government to permissibly afford more people an opportunity to commit an offense, we cannot conclude based on the facts here that the timing of the solicitation could affect the risk of inducing a person—not otherwise ready—to commit the crime. Additionally, the court's supposition that a "significant number of people" could be talked into patronizing a prostitute under these circumstances is unsupportable. The standard is whether the government's methods create a substantial risk of inducing the commission of a crime despite a person's lack of initiative or desire to commit it. *See Kaufman*, 734 P.2d at 468. We do not think a person, not otherwise inclined, would be swayed to patronize a prostitute by the methods employed in this case. And finally, the court indicated that it was uncertain about taking into account its factual finding that the detective was attractive, but it did not expressly state whether or not it actually considered that fact. To the extent the district court placed weight on the detective's looks, the fact that she may have been

"attractive" does not, without more, constitute extreme or excessive police conduct that would create a substantial risk of inducing criminal conduct.

¶14   We do not view the facts differently than the district court, but we do draw a different conclusion therefrom. *See id.* An analysis of the facts of this case under the objective standard shows that the government merely afforded Hernandez the opportunity to commit the offense. Therefore, an entrapment defense is not sure to leave all reasonable minds with a reasonable doubt as to whether Hernandez acted on his own inclination. Accordingly, the court erred in concluding as a matter of law that Hernandez was entrapped to commit the offense of patronizing a prostitute.

CONCLUSION

¶15   We hold that the court erred in concluding as a matter of law that Hernandez was entrapped. We therefore reverse and remand for further proceedings consistent with this opinion.

_____